```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM & ORDER
           -against-                    18-CR-0187(JS)

LAWRENCE LEWIS,

                Defendant.
------------------------------------X
APPEARANCES
For United States:   Christopher Charles Caffarone, Esq.
                     Mark Misorek, Esq.
                     Anthony Bagnuola, Esq.
                     United States Attorney's Office
                     610 Federal Plaza
                     Central Islip, New York  11722

For Defendant:       Peter E. Brill, Esq.
                     Brill Legal Group, P.C.
                     150 Motor Parkway, Suite 401
                     Hauppauge, New York  11788

                     Carl Andrew Irace, Esq.
                     The Law Offices of Carl Andrew Irace &
                     Associates, PLLC
                     12 Gay Road, #5128
                     East Hampton, New York  11937
```

SEYBERT, District Judge:

Defendant Lawrence Lewis moves for (1) a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29, or, in the alternative, (2) a new trial on all counts pursuant to Rule 33. (Mot., ECF No. 161; Support Memo, ECF No. 162.) The Government opposes the motion in its entirety. (Opp'n, ECF No. 164.) For the following reasons, the motion is DENIED.

1

BACKGROUND[1]

The Court presumes familiarity with the record and summarizes the facts and evidence only as necessary for resolution of Defendant's motion.

The Government indicted Defendant on April 11, 2018, and secured a Superseding Indictment on June 5, 2019. (Indictment, ECF No. 1; Superseding Indictment, ECF No. 46.) Defendant initially retained attorney Christopher Cassar to represent him. (ECF No. 5.) On November 4, 2019, trial commenced; however, on November 25, 2019, in the middle of Defendant's jury trial, the Court disqualified Mr. Cassar due to a per se conflict of interest and declared a mistrial as a manifest necessity. (Min. Entry, ECF No. 95.) The Court denied Defendant's resulting motion to dismiss the Superseding Indictment on Double Jeopardy grounds. (See generally, Order, ECF No. 108.) The Second Circuit affirmed. (Mandates, ECF Nos. 111, 112.)

Thereafter, the Court set a trial date of October 4, 2021 to provide Defendant's new, CJA-appointed counsel time to prepare. (Min. Entry, ECF No. 114.) Jury selection took place on October 4, 2021 (Min. Entry, ECF No. 125), and the trial commenced on October 7, 2021 (Min. Entry, ECF No. 127). On November 9, 2021,

---

[1] The facts are recited as relevant to the Court's analysis and are drawn from the Docket, the Superseding Indictment, pre-trial proceedings, and the Trial Transcript ("Tr."). Citations to "GX" refer to the Government's exhibits.

following a weekslong jury trial, Defendant was convicted on all counts. (See Verdict Sheet, ECF No. 154.) The jury found Defendant guilty of the following felony offenses: Racketeering (Count One) and Racketeering Conspiracy (Count Two) predicated on five racketeering acts, including narcotics trafficking,[2] sex trafficking, the murder of victim John Birt, and tampering with two Government witnesses; drug trafficking and drug trafficking conspiracy (Counts Three and Twelve); firearms-related offenses (Counts Four, Seven, Eight, and Ten); sex trafficking (Count Five); gang-related assault (Count Six); the gang-related murder of John Birt (Counts Nine and Eleven); and witness tampering and witness tampering conspiracy (Counts Thirteen, Fourteen, and Fifteen).

After being granted extensions, Defendant filed the instant post-trial motion on January 9, 2022. The Government opposed on February 11, 2022. Defendant did not file a reply.

## DISCUSSION

I. Legal Standard

    A. Rule 29 Motion for a Judgment of Acquittal

Under Rule 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the

---

[2] The jury found the Government failed to prove beyond a reasonable doubt that Defendant conspired to distribute PCP, but nevertheless found the Government proved that Defendant conspired to distribute a substance involving cocaine base and heroin. (Verdict Sheet at 2-3, 7-8.)

defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). On a motion for a judgment of acquittal, "the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Kenner, No. 13-CR-0607, 2019 WL 6498699, at *3 (E.D.N.Y. Dec. 3, 2019) (internal quotation marks and citations omitted; emphasis in original). "[V]iewing the evidence in the light most favorable to the government means drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." Id. (internal quotation marks and citation omitted).

    B.    Rule 33 Motion for a New Trial

Under Rule 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). This Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." United States v. Aguiar, 737 F.3d 251, 264 (2d Cir. 2013) (internal quotation marks and citation omitted). "A district court may grant a Rule 33 motion only in extraordinary circumstances, and only if there exists a real concern that an innocent person may have been convicted." Kenner, 2019 WL 6498699, at *3 (internal quotation

4

marks and citations omitted). Rule 33 gives this Court "broad discretion" but "that discretion must be exercised 'sparingly,' and relief under the rule should be granted 'only with great caution and in the most extraordinary circumstances.'" United States v. Mayes, No. 12-CR-0385, 2014 WL 3530862, at *1 (E.D.N.Y. July 10, 2014) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)); see also United States v. Costello, 255 F.2d 876, 879 (2d Cir. 1958). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).

II. Analysis

Defendant makes two arguments in his post-trial motion. First, Defendant argues that the Court improperly admitted testimony from multiple witnesses regarding gang signifiers and affiliation. (Support Memo at 2-17.) Defendant claims that the improperly admitted testimony, which he describes as inadmissible hearsay, "tainted the entire proceeding" and is grounds for an acquittal on all counts or a new trial. (Id. at 1.) Second, Defendant argues that the evidence supporting the jury's verdict that Defendant killed victim John Birt in furtherance of the charged racketeering enterprise was insufficient as a matter of law, warranting acquittal on Counts Nine, Ten, and Eleven, or at

5

a minimum a new trial.  (Id. at 17-20.)  The Court addresses Defendant's arguments in turn and finds they are without merit.

     A.   <u>Evidence of Gang Affiliation Was Properly Admitted</u>

Defendant takes issue with trial testimony from several witnesses regarding gang signifiers and the gang affiliations of uncharged individuals and Defendant.  Specifically, Defendant argues that the challenged testimony constitutes hearsay which may not be admitted under the hearsay exception for co-conspirator statements. However, the premise of Defendant's argument is flawed, because much of the evidence Defendant identifies as wrongly admitted is not hearsay.  Moreover, the hearsay exception for co-conspirator statements applies to the challenged testimony, and Defendant's effort to slice and dice the conspiracy into discrete and opposing conspiracies is unavailing.  Last, even setting aside the challenged testimony, the Government introduced overwhelming evidence of Defendant's (and other uncharged individuals') affiliation with the Bloods street gang beyond the testimony challenged here.

To begin, much of the evidence to which Defendant objects on hearsay grounds is not, in fact, hearsay.  For example, Defendant challenges certain testimony from Deanna Sieber, a witness who testified about her understanding that uncharged individuals -- "Mousey," "Ace," and "Billy" -- were Bloods members. (Tr. 284-85.)  When asked about each individual's gang membership,

6

Sieber testified that they were in the Bloods. (E.g., Tr. 284:22-23 ("Q: What gang is Mousey in? A: The Bloods.").) Sieber's testimony as to Mousey's, Ace's, and Billy's membership in the Bloods was based on her own personal observations stemming from the three years she had known Defendant and the individuals with whom he associated, not statements made by an out-of-court declarant. See FED. R. EVID. 801(c) ("'Hearsay' means a statement that the declarant does not make while testifying at the current trial or hearing."). For that reason her testimony was plainly admissible. Similarly, the Government elicited testimony from Joanne Pinder and Rebecca Roth as to their understanding of gang terminology and handshakes. (Tr. 336; 342-43, 494-95.) Pinder's ;and Roth's respective testimony was based on their extensive out-of-court experiences with Bloods gang members; indeed, Pinder based her testimony on her fifteen years of dating three different Bloods members. (Tr. 336:12-23.) Defendant was entitled to -- and did -- cross-examine these witnesses to challenge the basis for their personal knowledge. (Tr. 412-13.) But the mere fact that at some point Pinder and Roth may have learned information about gang terminology and handshakes from statements by Bloods members does not transform their testimony into hearsay.

In any event, to the extent the challenged testimony can be characterized as hearsay, the hearsay exception for co-conspirator statements applies. Federal Rule of Evidence

7

801(d)(2)(E) provides that "a statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). "Though the Rule requires that both the declarant and the party against whom the statement is offered be members of the conspiracy . . . there is no requirement that the person to whom the statement is made also be a member." United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1199 (2d Cir. 1989) (internal citation omitted). Further, although RICO conspiracies "may grow quite large," the district court "must find the existence of a specific criminal conspiracy beyond the general existence of" an organized crime group, here, the Bloods. Gigante, 166 F.3d at 82.

Defendant seizes on Gigante's warning to argue that the Government "failed to establish anything more than a general conspiracy." (Mot. at 17.) So, for example, with respect to testimony from Terry Arrastia, an admitted member of the Bloods, albeit from a different "set" than Defendant, Defendant argues that his testimony relating to conversations he and other Bloods members had regarding Defendant's reputation after the murder of John Birt was inadmissible under the co-conspirator exception, because the Government "failed to establish a specific goal among the speakers." (Id.) Notably, the Court instructed the jury not

8

to consider the challenged testimony from Arrastia for the truth of the matter asserted, i.e., that Defendant was the "known shooter" of Birt, but rather for the purpose of establishing Defendant's gang affiliation. (Tr. 1483.) But in any event, Arrastia's testimony involved statements made in furtherance of the Bloods conspiracy that the Government set out to prove at trial. The Government alleged that Defendant, a member of the Bloods since around April 2004, conspired with other Bloods to commit acts of violence, including murder, and narcotics trafficking; to promote and enhance the gang's prestige, reputation, and position vis-à-vis rival criminal organizations; to keep victims and rivals in fear of the gang's members and associates; to enrich themselves and their associates through criminal activity; and to ensure discipline and compliance with the gang's rules. (Superseding Indictment ¶¶ 1-4.) To prove these allegations, statements made by other Bloods members that connected Defendant to the charged criminal conspiracy and its objectives, such as enhancing the gang's prestige, reputation, and position vis-à-vis rival criminal organizations through violence, were admissible as co-conspirator statements. As a fellow Bloods member, albeit from a different set, statements from Arrastia regarding Defendant's involvement in the murder of a rival gang

9

member[3] were made in furtherance of the specific Bloods conspiracy the Government proved at trial. The fact that Arrastia's set of Bloods may have been feuding with Defendant's set does not place Arrastia's testimony outside the criminal conspiracy in the way the Gigante defendant's explicit refusal to join a conspiracy to commit a specific murder rendered discussions regarding that murder scheme outside the scope of the conspiracy's specific criminal purpose. See Gigante, 166 F.3d at 83. Indeed, the Gigante panel observed that there can be a conspiracy "comprising many different Mafia families" and that such conspiracies "may grow quite large." Id. at 82-83.

Last, the Government introduced overwhelming evidence of Defendant's affiliation with the Bloods, much of which came from Defendant himself. For example, Sieber and Roth testified that in the midst of a heated altercation with Sieber and Roth, Defendant referred to himself as a "super Blood." (Tr. 291:6-12; 490:5-8.) Their testimony was consistent with that of other witnesses. (Tr. 1289:9-15 (Arrastia testifying that Defendant "introduced himself as that," i.e., a Bloods member); Tr. 2015:1-6 (Andrew Trotman, another self-proclaimed Bloods member, testifying Defendant "boasted about being a Blood"); Tr. 1675-76 (Aimee Schmidt-Demint, a close friend of Defendant's for approximately three years,

---

[3] As described below, Birt was a member of the Crips gang.

10

testifying she knew Defendant was in the Bloods "[b]ecause he had told me" and also by the way she saw him "communicate with only a certain group of people, handshakes that he would do with only a certain group of people").) Defendant does not challenge the admissibility of this and other evidence establishing Defendant's membership in the Bloods. (See, e.g., Tr. 502-07; 549; 971-92; 1029-30.) The Government also introduced additional evidence of the gang affiliations of uncharged individuals such as Mousey, Pound, and G. (Tr. 1028 (Shana Denis-Hamil testifying as to Mousey's membership in the Bloods); Tr. 1291-93 (Arrastia testifying about meeting involving Bloods members Pound and G).) Defendant does not claim this evidence was improper. Nor does Defendant challenge additional testimony elicited by the Government regarding gang signifiers and lingo. (Tr. 333; 997; 1308; 1325-28; 1676.) Not only that, the foregoing testimony was corroborated by further evidence consistent with Bloods membership, including photographs in which Defendant used hand gestures that signify Bloods membership. (Tr. 1949-60; GX 254.)

In light of the overwhelming evidence regarding Defendant's membership in the Bloods conspiracy the Government proved at trial, the Court finds there is no "real concern that an innocent person may have been convicted" or that the jury's verdict constitutes a miscarriage of justice. United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007). The Court has also considered

11

Defendant's arguments regarding other portions of challenged testimony and finds that they are without merit. Accordingly, Defendant's motion for an acquittal on all counts or for a new trial is DENIED.

B. <u>The Evidence Was Sufficient to Sustain the Murder in Aid of Racketeering Conviction</u>

Next, Defendant asks the Court for acquittal or a new trial on Counts Nine, Ten, and Eleven, which relate to the murder of John Birt, arguing there was insufficient evidence that Defendant committed the murder in furtherance of the Bloods racketeering conspiracy. (Support Memo at 17-20.) The Court disagrees: There was ample evidence at trial to sustain the jury's verdict on these Counts.

To begin, the Government introduced video surveillance taken at the Illusions Gentleman's Club on the night of Birt's murder. (GX 17.) The video shows the events leading to Birt's murder, which started when Birt and his two friends, Daeshron Coleman and Keith Banks, posed for photographs. Banks testified that he displayed a "C" hand gesture for the photograph to signify his membership in the Crips, a rival gang to which Birt and Banks belonged. (Tr. 860.) In response, one of Defendant's associates joined the group and displayed a "B" hand gesture for Bloods. (Tr. 860-61; 872.) Banks then slapped down the individual's hand, resulting in an argument between Defendant and Birt. (Tr. 861.)

12

As the jury found, the altercation ended with Defendant fatally shooting Birt in the abdomen.

The Government also introduced ample evidence from which the jury could reasonably connect Defendant's willingness to murder Birt over a perceived insult to the Bloods to his membership and participation in the affairs of that gang. First, the jury heard testimony from two Bloods members, Arrastia and Trotman, regarding earning respect for the Bloods gang. According to Arrastia, the Bloods are "required to have respect," "fear, within the community," and "make money," and that to accomplish these goals the gang's members will commit acts of violence like "robbery, shootings, fighting, brawls, [and] stabbings." (Tr. 1295:12-15.) And according to Trotman, gang members had to "put in work" by fighting, stabbing, or shooting somebody to "gain[] rep for the Bloods." (Tr. 1922:15-22; see also 1926-27; 1959.) From this evidence, the jury could have reasonably concluded that Defendant murdered Birt, a rival gang member, to "put in work," earn respect for the gang, and further the gang's criminal operations. Indeed, as Defendant's ex-girlfriend, Shana Hamil, testified, Defendant said he would die for the Bloods. (Tr. 972:2-8.)

Moreover, the evidence at trial showed Defendant aggressively represented the Bloods' interests and goals. For example, Arrastia testified that Defendant had the "green light"

13

to initiate new members and had been in contention for a leadership position before his arrest. (Tr. at 1308; 1302-03.) And as Arrastia testified, one way to attain such authority in the Bloods gang was to commit acts of violence against someone who disrespects the gang. (Tr. 1297:6-16.)

Last, the Court is unpersuaded by Defendant's remaining arguments that the murder was not related to the charged racketeering enterprise. (Support Memo at 18-19.) Defendant does not challenge the Court's instruction, which embodied the standard he insists the Government failed to meet. (See Tr. 2757-59.) And at this stage the Court is not permitted to usurp the role of the jury or substitute its own determination of the weight of the evidence and the reasonable inference to be drawn therefrom. See Kenner, 2019 WL 6498699, at *3. Rather, it must view the evidence in the light most favorable to the Government by drawing all inferences in the Government's favor and deferring to the jury's assessments of the witnesses' credibility. Id. Based on the foregoing evidence, the Court finds that there was sufficient evidence to permit a rational trier of fact to conclude that Defendant committed the murder of John Birt and related firearm offenses in furtherance of the Bloods racketeering enterprise.

Accordingly, Defendant's motion for an acquittal or a new trial on Counts Nine, Ten, and Eleven is DENIED.

CONCLUSION

For the reasons stated herein, Defendant's motion is DENIED in its entirety.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April  22 , 2022
       Central Islip, New York

15